# In the United States Court of Federal Claims

No. 24-1364C
(Filed: May 15, 2025)
NOT FOR PUBLICATION

```
*************************************
                                    *
BROADWAY GOLD, LLC,                 *
                                    *
                                    *
                                    *
              Plaintiff,            *
                                    *
    v.                              *
                                    *
THE UNITED STATES,                  *
                                    *
              Defendant.            *
                                    *
*************************************
```

## OPINION AND ORDER

On September 3, 2024, Plaintiff Broadway Gold, LLC ("Broadway" or "Plaintiff") filed a Complaint under the Contract Disputes Act ("CDA" or "Act") alleging that the United States Postal Service ("USPS") breached a lease agreement made with Plaintiff's predecessor-in-interest,[1] Broadway Bushwick Builders, LP ("Bushwick"). On October 5, 1998, Bushwick entered a lease, as landlord, and the USPS, as tenant, for the property located at 1369 Broadway, Brooklyn, New York 11221-9997, ("the Property") under which the USPS would rent office space to operate as a post-office and distribution center ("the Lease"). Plaintiff seeks monetary damages, civil penalties and equitable relief for the USPS's alleged breach of the lease agreement.

On January 6, 2025, the United States (the "Government"), filed a Partial Motion to Dismiss Count I for lack of jurisdiction under the Rules of the Court of Federal Claims ("RCFC") 12(b)(1) and Counts III and IV for failure to state a claim upon which relief can be granted under RCFC 12(b)(6). This matter is now fully briefed and ripe for decision. Oral argument is unnecessary. For the reasons set forth below, the Government's Motion to Dismiss is hereby **DENIED**.

    **I.**    **BACKGROUND**

---

[1] Plaintiff alleges in the Complaint that Broadway acquired the Property by deed dated January 6, 2012, from Bushwick. Compl. ¶ 17.

1

The Lease contains a fixed-price purchase option under which the USPS may purchase the Property at various times and for differing fixed amounts during the term of the Lease. The fixed-price purchase option provides that the USPS can purchase the Property for a fixed price set forth in the option by giving 120 days' notice to the lessor that the USPS is exercising this option. The fixed-price purchase option provides:

> Option to Purchase Rider
>
> In consideration of the execution of the lease and of all the mutual covenants and agreements set forth herein, the lessor [Broadway] (herein after referred to as Seller) agrees to sell and to convey to the U.S. Postal Service and its assigns, at the price and time set forth below, the fee simple title to the land described in the lease, with the buildings and improvements thereon . . . described in the lease.

Compl. Ex. 4, ECF 1-5.

The Lease then sets forth the purchase prices for the five options renewal periods. The purchase price for the relevant, fourth option renewal period is $6,487,953.00. The purchase option imposed a duty of notice on the Postal Service:

> The Postal Service will give the Seller [Broadway] notice of election to purchase at least one hundred and twenty (120) days in advance of the respective times set forth above. Upon said notice by the postal service, this purchase agreement is effective and binding upon the parties.

*Id.* By letter dated July 19, 2023, the USPS sent a letter to Plaintiff stating that it was exercising the option to purchase the Property for $6,487,953.00 as provided for in the Lease. Compl. Ex. 5, ECF 1-6 ("Notice Letter"). Plaintiff, however, did not tender a warranty deed to the USPS, asserting that the purchase option was unenforceable because of the USPS's alleged breaches. Thus, the property closing has not yet occurred. The USPS continued to pay rent until the 120 day notice period expired and the closing date of December 1, 2023 arrived. *See* Ex. 2 (December 1, 2023 letter to Broadway). The USPS stopped rental payments after this date alleging that it exercised its option to purchase the property. The USPS sent a letter to Plaintiff, dated February 14, 2024, stating:

> Since the Postal Service is the equitable owner, your client is simply holding the legal estate as a trustee for the Postal Service, to whom all beneficial interest has passed. And since the Postal Service had tendered the full purchase price in escrow, all amounts due were available upon closing. Since the Postal Service is the owner of the property at this point, no rent is due. As a result of the transfer of equitable ownership, your client ceased to be the Postal Service's landlord as of December 1, 2023. Therefore the Postal Service is no longer required to pay any rent after that date.

Compl. ¶ 45.

On March 26, 2024, Broadway filed a Notice of Claim under the CDA with the USPS contracting officer. Compl. Ex. 13, ECF-14. The contracting officer denied the claim in a final decision dated May 24, 2024. Compl. Ex. 14, ECF-15.

## II.   JURISDICTION AND STANDARD OF REVIEW

### A.   Jurisdiction

The Tucker Act authorizes the Court of Federal Claims "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). Relevant to the case at hand is the CDA. The Tucker Act defines the jurisdiction of the Court of Federal Claims with respect to disputes arising under the CDA as follows:

> The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2).

The Tucker Act, 28 U.S.C. § 1491(a)(1), gives this Court jurisdiction over "claims for money damages against the United States" founded upon "'any Act of Congress'" in cases not sounding in tort. *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part) (quoting 28 U.S.C. § 1491(a)(1)). To come within the Court's Tucker Act jurisdiction, however, "a plaintiff must identify a separate source of substantive law that creates the right to money damages"—in other words, a source that is "money-mandating." *Id.*

### B.  Standard of Review for Motions to Dismiss Pursuant to RCFC 12(b)(1)

This Court's jurisdiction to entertain claims and grant relief depends on the extent to which the United States has waived sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). The burden of establishing the Court's subject matter jurisdiction rests with the plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). When faced with a motion to dismiss for lack of subject matter jurisdiction, pursuant to the Rules of the Court of Federal Claims ("RCFC") 12(b)(1), a court must assume that all undisputed facts alleged in the complaint are true, and must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

### C.  Standard of Review for Motions to Dismiss Pursuant to RCFC 12(b)(6)

A complaint may be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When considering a motion to dismiss for failure to state a claim upon which relief may be granted, the Court "must accept as true all the factual allegations in the complaint, and must indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted).

"To avoid dismissal" under RCFC 12(b)(6), "a party need only plead 'facts to state a claim to relief that is plausible on its face,' with facts sufficient to nudge 'claims across the line from conceivable to plausible.'" *TrinCo Inv. Co. v. United States*, 722 F.3d 1375, 1380 (Fed. Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim is plausible on its face when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)).

### III.   DISCUSSION

Plaintiff's Complaint alleges four counts: (1) breach of the Lease allows Plaintiff to request declaratory judgment that the Lease be declared void or in the alternative, the USPS may not exercise the Lease option to buy the Property; (2) breach of the Lease because USPS allegedly failed to maintain the Property; (3) breach of the lease for failure to pay rent from December 2023 until the present; and (4) breach of the Lease's purchase option for failure to pay rent since December 2023 until the present. Compl. ¶¶ 52-92.

### A. The Government's Motion to Dismiss Count I is Denied

In this CDA case, The Government asserts that this Court does not have jurisdiction to consider Count I of Plaintiff's Complaint, which seeks a declaratory judgment. Compl. at ¶¶ 52-63. The Government argues that this Court is precluded from entering declaratory judgments and instead is limited in its relief to monetary damages only. ECF No. 8 at 4. The Court disagrees.

The Federal Circuit has clearly held that declaratory judgments are not precluded from this Court's CDA jurisdiction but has cautioned that it is not always appropriate to consider them. *See Alliant Techsys., Inc. v. United States*, 178 F.3d 1260, 1271 (Fed. Cir. 1999). In fact, the discretion is limited to circumstances during contract performance, including when there is "a fundamental question of contract interpretation or a special need for early resolution of a legal issue." *Id.* In those narrow circumstances, the Court "is free to consider the appropriateness of declaratory relief, including whether the claim involves a live dispute between the parties, whether a declaration will resolve that dispute, and whether the legal remedies available to the parties would be adequate to protect the parties' interests." *Id.*

Thus, the Court must consider whether such relief may be appropriate given the circumstances of the case. In *Alliant*, the question before the Federal Circuit was whether the contractor was required to satisfy an option clause within the contract when the government exercised it notwithstanding the contractor's objection to performing. *Id.* at 1263. In that case, a

4

declaratory judgment was appropriate because there was a need for the court to provide an "early resolution of a legal issue." *Id.* at 1271.

Similarly, here Plaintiff asserts that a declaratory judgment is necessary for adequate relief because it would provide an early resolution of a legal issue. Here, there is a live dispute concerning whether the USPS can exercise an option in the lease agreement to purchase the property as Plaintiff argues that the Government is unable to exercise the option to purchase due to the Government's alleged breach of the lease agreement. Further, it is clear that a declaration concerning the terms of the contract's option to purchase would resolve that dispute.

Finally, the Court must determine whether the legal remedies available to the parties would be adequate to protect Plaintiff's interests. While the Government asserts that monetary damages are an adequate form of relief for Plaintiff, Plaintiff contends that money damages are inadequate because the Government has not yet exercised its option to purchase and the option to purchase is void. Thus, Plaintiff asserts that monetary damages alone would not be adequate relief because declaratory relief would determine "the parties' rights and obligations under the Lease, rights in the property and whether the Lease was terminated by the USPS by acquiring equitable ownership." ECF No. 11 at 12. Therefore, because monetary damages would be insufficient to provide Plaintiff with relief as pled under Count I, the Court holds that it may entertain Plaintiff's request for nonmonetary relief.

Although it is too early at this juncture to decide whether a declaratory judgment is necessary, the Court holds that Plaintiff's Count I requesting a declaratory judgment is not barred by lack of subject matter jurisdiction under the circumstances of the case. Because the dispute here between the parties concerning contract performance is ongoing, it is possible that a declaratory judgment may provide an "early resolution of a legal issue." *Alliant*, 178 F.3d at 1271. Further, the Government concedes that there is no other venue in which Plaintiff can bring this claim for nonmonetary relief.[2] Thus, the Government's Motion to Dismiss Count I of Plaintiff's Complaint is denied.

### B. The Government's Motion to Dismiss Counts III and IV are Denied.

The Government asserts that Count III and Count IV of Plaintiff's Complaint fail to state a claim upon which relief can be granted. In Counts III and IV Plaintiff alleges that the USPS breached the lease agreement by failing: (1) to pay for maintenance and repair; (2) to obtain the variances or Certificates of Occupancy following the completion of constructing the loading dock; and (3) to pay rent.[3] Thus, because of the USPS' breach of the lease agreement, Plaintiff

---

[2] In the alternative, Plaintiff requests that the Court transfer this claim to the United States District Court for the Eastern District of New York if Count I is dismissed for lack of jurisdiction. The Government opposes Plaintiff's alternative request because this Court has exclusive jurisdiction over CDA cases. Thus, the Government contends that the Eastern District of New York cannot hear this case because this Court has exclusive jurisdiction over CDA claims. ECF No. 12 at 4.

[3] The Complaint alleges:

5

asserts that the USPS was unable to properly exercise the option to purchase the property.[4] Plaintiff seeks damages for the total of the monthly rental payments of $51,221.67 each from December 1, 2023 until the conclusion of the action.

The Government argues that both of these counts fail to state a claim upon which relief can be granted because the USPS validly exercised its purchase option and, pursuant to the law of equitable conversion, is the equitable owner of the Property. In its Response brief, Plaintiff avers that the law of equitable conversion is inapplicable here because the USPS breached terms of the lease agreement and was thus barred from exercising the lease agreement's purchase option. ECF No. 11 at 16.

The Court agrees with Plaintiff. Although the Government asserts that the USPS validly exercised its purchase option and is the equitable owner of the Property pursuant to the law of equitable conversion, the Government would be barred from exercising its option to purchase if it had, in fact, already breached the contract. *See Johnson v. Yellow Cab Transit Co.,* 321 U.S. 383, 387 (1944)) (The Supreme Court states that a party asking a court for equitable relief "must come with clean hands."). Thus, if Plaintiff adequately pleads that the USPS breached a valid lease agreement prior to exercising the purchase option, then Counts III and IV of Plaintiff's Complaint do not fail to state a claim.

Plaintiff adequately alleges breach of the lease agreement. First, Plaintiff alleges the existence of a valid lease agreement. Plaintiff alleges that Plaintiff and the USPS entered a valid lease agreement on October 5, 1998, for the use and occupancy of 1369 Broadway, Brooklyn,

---

> Following its purported exercise of the Option on July 19, 2023 (Ex. 5), the USPS stopped the payment of rent on December 1, 2023 and has not paid rent for the past nine months (December of 2023 to August of 2024). Each monthly rental payment is $51,221.676 (not including interest, late charges, etc.) totaling $460,995.00, and counting.

Compl. ¶ 44.

[4] Plaintiff also alleges an alternative argument:

> Assuming the Option was properly exercised by the USPS and the USPS was not guilty of unclean hands and/or other contractual breaches of the Lease voiding the exercise of the Option (as alleged in other parts of the Complaint, *supra,*),Broadway is entitled to collect monthly rent from the USPS until the closing of title under ¶ 8 of the Option Rider. 85. Paragraph 8 of the Option Rider provides the Lease and all of its mutual obligations are in effect until the Property Deed is executed and delivered.

Compl. ¶¶ 84-85.

New York 11221-9997.[5] Further, the Complaint's pleaded facts, which must be accepted as true and afforded every liberal inference, adequately allege that the USPS breached the lease agreement and that the USPS failed to exercise its option to purchase because of these breaches. Specifically, the Complaint alleges that before the USPS' exercise of the Option, it breached several lease provisions: (1) the Complaint alleges that the USPS failed to pay for maintenance and repair[6]; (2) The Complaint alleges that the USPS breached the Lessor Improvement Agreement by failing to obtain the variances or Certificates of Occupancy following the completion of constructing the loading dock[7]; (3) The Complaint alleges that the USPS failed to pay rent.[8]

---

[5] The "action arises out of a written lease between Broadway, as landlord, and the USPS entered on October 5, 1998 (the "Lease"). The Lease governs the use and occupancy of 1369 Broadway, Brooklyn, New York 11221-9997 (the "Property"), which the USPS uses as a post-office and distribution center."

Compl. ¶ 2.

[6] The Complaint alleges:

Since 2018, Broadway paid for certain repairs and/or maintenance obligations that were the responsibility of the USPS under the Maintenance Rider to the Lease (Ex. 2). Specifically: 1) to the back gate that secures the Building in August of 2018; 2) an incident of graffiti in March of 2023; 3) repairs to the air conditioning unit; and 4) replacement of ceiling tiles. 33. None of the repairs and/or maintenance were the Lease responsibility of Broadway and should have been paid for by USPS.

Compl. ¶¶ 32-33.

[7] The Complaint alleges:

Under a Lease Amendment and Lessor Improvement Agreement5 (collectively, the "Improvement Agreements") entered between Bushwick, the original landlord, and the USPS about one year after the Lease was executed, Bushwick would improve the Property with a loading dock, which includes rolldown doors and bollards.[7] The USPS breached the Lessor Improvement Agreement by failing to obtain the variances or Certificates of Occupancy following the completion of constructing the loading dock.[7] Absent the Certificate of Occupancy, the loading dock is an illegal structure under New York law and a breach of Plaintiff's mortgage encumbering the Property.

Compl. ¶¶ 38, 42, 43.

[8] The Complaint alleges:

Following its purported exercise of the Option on July 19, 2023 (Ex. 5), the USPS stopped the payment of rent on December 1, 2023 and has not paid rent for the past nine months (December of 2023 to August of 2024). Each monthly rental payment

7

Because the Complaint alleges in concrete and non-conclusory terms that a valid lease agreement exists between Plaintiff and the USPS, and that the USPS breached specific terms of that lease agreement, the Complaint alleges a plausible breach of contract claim.  To prevent dismissal under RCFC 12(b)(6), Plaintiff's claims only need to be plausible.  *See TrinCo Inv. Co.*, 722 F.3d at 1380 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. at 570).  ("To avoid dismissal" under RCFC 12(b)(6), "a party need only plead 'facts to state a claim to relief that is plausible on its face,' with facts sufficient to nudge 'claims across the line from conceivable to plausible.'").  The Court further agrees with Plaintiff that the USPS's wrongdoing should be weighed in determining whether to let the affirmative defense of equitable conversion or merger bar Plaintiff's claims.  Plaintiff's claims should not be barred at this preliminary stage.  Thus, the Government's Motion to Dismiss Counts III and IV of the Complaint under RCFC 12(b)(6) are **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** the Government's Motion to Dismiss. The Government shall file its Answer to the Complaint within 45 days from the date of this Opinion and Order.

**IT IS SO ORDERED.**

s/Edward J. Damich  
EDWARD J. DAMICH  
Senior Judge

---

is $51,221.676 (not including interest, late charges, etc.) totaling $460,995.00, and counting.

Compl. ¶ 44.